UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| *ROESLEIN & ASSOCIATES, INC.,* | ) | |
| | ) | |
| Plaintiff, | ) | **Oral Argument Requested** |
| | ) | |
| v. | ) | Case No: 4:22-cv-01105-RWS |
| | ) | |
| *WENDT, LLP,* | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT'S MEMORANDUM OF LAW SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Wendt, LLP ("Wendt"), by and through its undersigned attorneys, submits the following Memorandum of Law in Support of its Motion for Partial Summary.

## I.    INTRODUCTION

This is a lawsuit about whether Plaintiff Roeslein & Associates, Inc. ("Roeslein") gets to keep work performed by Wendt on an Ohio project without paying for it. During Wendt's work, Roeslein terminated Wendt without written notice and filed this lawsuit claiming its termination was "for default" and, as a result, it could keep the almost $2 million of work completed by Wendt *without paying for it* and make *Wendt pay* all costs that Roeslein incurred post-termination to finish the project.

The unambiguous terms of the parties' contract drafted by Roeslein required Roeslein to provide a specific form of written notice to effect termination for default. Remarkably, the uncontroverted material facts establish Roeslein deliberately *chose* not to provide such written notice. Consequently, Roeslein never effected a termination *for default* and under the terms of the contract, the termination of Wendt was for convenience. Because Roeslein's contract disallows recovery of post-termination costs to finish the project against Wendt in the event of a termination

for convenience, Wendt is entitled to partial judgment as a matter of law declaring that termination for default was not effected under the plain language of the Agreement and Roeslein cannot recover costs that it incurred to finish the project after releasing Wendt.

## II.    SUMMARY OF THE UNCONTROVERTED FACTS

Roeslein is an engineering and construction firm that designs, engineers, and constructs can-making and industrial plant buildings.  (Wendt's Statement of Uncontroverted Material Facts ("SUMF"), ¶1).  Roeslein retained Wendt to serve as a subcontractor for rigging installation and structural mezzanine installation for the construction of a canning plant in Huron, Ohio (the "Project").  (SUMF, ¶¶3-4).

The relationship between Roeslein and Wendt was governed by two purchase orders, each containing identical terms and conditions, referenced as "Roeslein & Associates, Inc. five page Standard Terms and Conditions (T&CPURCH-9.07.05 Over100k.)" (collectively, "Agreement"). (SUMF, ¶¶3-6).  Roeslein drafted the Agreement, which is governed by Missouri law.  (SUMF, ¶8).  Termination of the Agreement can be for default or convenience.  (SUMF, ¶¶10, 17).

### Termination for Default

The subparagraphs of Section 31(a) identify circumstances that constitute default under the Agreement.  (SUMF, ¶11).  And Section 31(c) provides "[t]ermination for default shall be effected[1] by **written notice from Roeslein stating the circumstances of default** and **the date upon which Roeslein intends to complete the removal from the worksite** of the Work in its current state."  (SUMF, ¶13 (emphasis added)).  The Agreement further provides, in relevant part, that Roeslein must pay Wendt an amount that equals "the same ratio to the total Contract price as

---

[1] "Effect" is defined as "to cause to come into being."  *See* Effect Definition & Meaning, Merriam Webster, *available at* https://www.merriam-webster.com/dictionary/effect (last visited Dec. 15, 2023).

the amount of the Work completed by" Wendt, less any costs incurred by Roeslein finish the project (referenced as "excess costs").  (SUMF, ¶¶15-16).

### Termination for Roeslein's Convenience

The Agreement provided that Roeslein has the right to terminate the Agreement at any time and for any reason upon written notice to Wendt.  (SUMF, ¶17).  Upon termination for convenience, Roeslein must pay Wendt an amount that equals "the same ratio to the total Contract price as the amount of the Work completed by" Wendt.  (SUMF, ¶¶18-19).  A party terminated for convenience is not responsible for any excess costs incurred by Roeslein.  (SUMF, ¶¶18-19).

### Roeslein's Alleged Termination for Default

Roeslein admits it never provided written notice stating the circumstances of any purported default per the clearly stated requirements of its own Agreement.  (SUMF, ¶21).  Instead, a Roeslein employee called a Wendt employee and merely stated that Roeslein had "chosen to release" Wendt and directed Wendt to contact Roeslein's upper management for further information.  (SUMF, ¶22).  Wendt subsequently asked Roeslein for "written notice of why we were kicked off the project…[i]ncluding the name of the individual…" pursuant to the Agreement's requirements.  (SUMF, ¶23).  In response, Roeslein internally communicated: "…I do not want to get into too many specifics about why we kicked them off" and then concluded "just give him the names; nothing more."  (SUMF, ¶¶24-25).  A portion of the internal Roeslein email exchange is as follows:

24529289.v2

Date:       Fri, 8 Apr 2022 7:57:39 PM (UTC)
Sent:       Fri, 8 Apr 2022 7:57:38 PM (UTC)
Subject:    Re: Wendt Request
From:       Gerry Rivera <GRivera@ROESLEIN.com>
To:         Steve Figueroa <SFigueroa@ROESLEIN.com>; Mitchel May <MMay@ROESLEIN.com>;
CC:         James Brandt <JBrandt@ROESLEIN.com>; Kyle Felts <KFelts@ROESLEIN.com>; Eric Valin
            <EValin@ROESLEIN.com >;

Just give him the names; nothing more.

Gerry Rivera
CFO & General Counsel
Roeslein & Associates, Inc.
787-640-5306

From: Steve Figueroa <SFigueroa@ROESLEIN.com >
Date: Friday, April 8, 2022 at 2:56 PM
To: Gerry Rivera <GRivera@ROESLEIN.com >, Mitchel May <MMay@ROESLEIN.com >
Cc: James Brandt <JBrandt@ROESLEIN.com >, Kyle Felts <KFelts@ROESLEIN.com >, Eric Valin
<EValin@ROESLEIN.com >
Subject: RE: Wendt Request

These are the 2 names.  Matt Mobley and Evan Thompson. Date 4/1 at approximately 8:55 AM.

Gerry/Mitch:  Do you want me to reply to Tim or do you want to handle it?  We can give him the names, but I do not want to
get into too many specifics about why we kicked them off.  These 2 folks committed a serious felony and that event violates
Roeslein corporate values.  I am not entirely sure why Tim is insisting on something in writing unless he is planning something.

**Steve Figueroa** | Vice President of Construction
Roeslein & Associates, Inc. | sfigueroa@roeslein.com
Mobile: +1 636 357 8985

(SOF, ¶¶23-26 and 28; *Exh. C* (Roeslein 0005435).  At no time did Roeslein ever provide written

notice to Wendt "stating [1] the circumstances of default and [2] the date upon which Roeslein

intends to complete the removal from the worksite of the Work in its current state," as required

under the plain and unambiguous terms of Section 31(c) of the Agreement to effect a termination

for default.  (SUMF, ¶¶20-22).

## III.    STANDARD OF REVIEW

The standards applicable to summary judgment motions are well-settled. Pursuant to

Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of

the information before the court shows "there is no genuine issue of material fact and the moving

party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  If the evidence is such that a reasonable jury could not return a verdict for the nonmoving

parties, partial summary judgment is appropriate. *Anderson v. Liberty Lobby Inc.*, 106 S.Ct. 2505,

2510, 2511 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 106 S.Ct. 1348, 1356 (1986). Although the movant has the burden of showing there is no genuine issue of fact, the nonmovants must set forth specific facts showing there is a genuine issue for trial; they may not rest upon mere allegation or denials of their pleading. *Anderson*, 106 S.Ct. at 2514; *Matsushita*, 106 S.Ct. at 1356; *Celotex Corporation v. Catrett*, 106 S.Ct. 2548, 2553 (1986). Matters of contractual interpretation and enforcement are appropriately decided on summary judgment. *See Nautilus Ins. Co. v. World Wrecking & Scrap Salvage Servs.*, 585 F. Supp. 3d 1201, 1206 (E.D. Mo. 2022).

## IV.    ARGUMENT

The uncontroverted material facts and controlling Missouri law prove that termination for default was not effected by Roeslein under the plain and unambiguous language of the contract terms it drafted. Interpretation of the parties' contract is a question of law appropriately determined by this Court decided on summary judgment. *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 44 (Mo. banc 2017); *Nautilus Ins. Co.*, 585 F. Supp. 3d at 1206.

It is well-established under Missouri law that when a contract specifies the manner of termination, the party terminating the contract must adhere to the contract's express terms to effectuate termination. *Gray v. Bicknell*, 86 F.3d 1472, 1479 (8th Cir. 1995) (*citing Baker v. Missouri Nat'l Life Ins. Co.*, 372 S.W.2d 147, 152 (Mo. App. 1963)). Notably, the *Baker* Court specifically rejected the assertion that telephonic notice of cancellation fulfilled a contract requiring written notice. The *Baker* Court explained:

> The nature of notice required by a contract depends upon the provisions of that contract . . . and the general rule is that, where the manner of exercising a power of termination is specified in a contract, notice will be effective only if given in the stated form, unless compliance with the contractual provision has been waived.... So, 'for the most part strict adherence to a requirement of writing is exacted'…and, when the contract calls for notice in writing, notice in the course of a telephone conversation is insufficient to satisfy the contractual requirement.

*Baker*, 372 S.W.2d at 152 (internal citations omitted).

The uncontroverted material facts prove termination for default was not effected by Roeslein.  The Agreement's plain language unequivocally requires written notice to effect termination for default: "Termination for default shall be effected by written notice from Roeslein stating the circumstances of default and the date upon which Roeslein intends to complete the removal from the worksite of the Work in its current state."  Thus, even though Roeslein alleges a default occurred,[2] the Agreement specifically requires written notice to effect *termination for default*.  It is indisputable written notice was not provided as **Roeslein's interrogatory answers admit that it did not provide written notice**. (SOF ¶27; *Ex. B*, Interrogatory No. 13).  Roeslein's act of purported termination consisted of Wendt employee telephoning Tom Shaw and telling him that, effective immediately, Roeslein "had chosen to release Wendt" and Wendt would need to contact Roeslein's "upper management for further information."  (SUMF ¶22).  But Missouri law does not allow a party to substitute a contractual requirement for written notice with telephonic notice.  *Baker*, 372 S.W.2d at 152.

Roeslein knew that termination for default had not been effected by its telephone call with a Wendt employee under the plain language of the Agreement.  When Wendt asked Roeslein to provide written notice of why it was being terminated (*i.e.*, the circumstances of what it did or did not do that would rise to the level of a "default" under the Agreement), Roeslein discussed the matter internally and deliberately decided to only provide "names; nothing more." (SUMF ¶¶23-26 and 28).  Roeslein's blatant refusal to comply with the terms of the Agreement that it drafted

---

[2] Wendt denies it defaulted under the Agreement.  However, it is not necessary for this Court to determine whether there had been default under the Agreement when deciding this motion because, as explained herein, Roeslein did not effect termination for default under the terms of the contract it drafted.

has clear consequences thereunder: termination for default was not effected.  Consequently, Wendt is entitled to judgment as a matter of law that termination for default was not effected and Roeslein cannot recover any excess costs (i.e. the costs incurred to finish the Project after kicking Wendt of the site).

## V.    CONCLUSION

The plain language of the Agreement, the Uncontroverted Material Facts, and Missouri law prove Roeslein's telephonic "release" of Wendt from the Project did not effect termination for default because it failed to comply with the terms of the contract drafted by Roeslein. Consequently, having failed to effect termination of the Agreement for default, Roeslein cannot recover any excess costs.  Therefore, Wendt respectfully judgment in its favor finding termination for default was not effected and Roeslein cannot recover any excess costs.

SANDBERG PHOENIX & von GONTARD P.C.

By:    */s/ M. Quinn Murphy*
M. Quinn Murphy, MO #54451
Stephen M. Murphy, MO #56417
James C. Keaney, MO #67173
600 Washington Avenue - 15th Floor
St. Louis, MO  63101-1313
314-231-3332
314-241-7604 (Fax)
qmurphy@sandbergphoenix.com
smurphy@sandbergphoenix.com
jkeaney@sandbergphoenix.com

Ross A. Boden, MO #63453
4600 Madison Avenue, Suite 1000
Kansas City, MO  64112
816-627-5332
816-627-5532 (Fax)
rboden@sandbergphoenix.com

*Attorneys for Defendant Wendt, LLP*

24529289.v2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2023 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system to all counsel of record.

<u>*/s/ M. Quinn Murphy*                          </u>

24529289.v2