UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROESLEIN & ASSOCIATES, INC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.          ) | No. 4:22 CV 1105 RWS |
| ) | |
| WENDT, LLP, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This case arises out of a contract dispute between Plaintiff Roeslein & Associates, Inc. and Defendant Wendt, LLP regarding Wendt's termination by Roeslein from a construction project. The case is now before me on a motion for partial summary judgment filed by Wendt. In its motion, Wendt argues that it is entitled to judgment finding that Roeslein cannot recover any excess costs under the contract because Roeslein did not effect termination for default as required by their Agreement. For the reasons discussed below, Wendt's motion will be granted.

## **BACKGROUND**[1]

Roeslein is an engineering and construction firm that designs, engineers, and constructs can-making and industrial plant buildings. In March 2021, Roeslein was

---

[1] The information in this section is taken from the parties' statements of uncontroverted material facts, ECF Nos. 65, 73 & 81, to the extent they are not specifically controverted by the opposing party as required by Local Rule 7–4.01(E).

hired to construct a canning plant in Huron, Ohio (the "Project").  In June 2021, Wendt submitted lump-sum bids to serve as a subcontractor for two parts of the project: rigging installation and mezzanine installation.  Roeslein accepted those bids and sent two purchase orders: one for rigging installation for the lump sum of $3,967,849 and one for mezzanine installation for the lump sum of $2,936,755 (the "Purchase Orders").  Both Purchase Orders were subject to Roeslein's Standard Terms and Conditions (the "Agreement").

The Agreement contained the following relevant provisions governing subcontractors, default, and termination:

> 8. <u>VENDOR, ITS EMPLOYEES AND SUBCONTRACTOR</u>.
>
> … [Wendt] shall have the right to hire or discharge its employees and designate their work classifications.  [Wendt] shall have complete charge and control of its employees and those of its subcontractors engaged in the performance of the Work. [Wendt] shall maintain strict discipline and order among its employees and employees of its subcontractor. [Wendt] shall not engage unqualified subcontractors nor employ unfit persons nor anyone unskilled in the work assigned. …
>
> 9. <u>ASSIGNMENTS AND SUBCONTRACTS</u>.
>
> …
>
> (c) [Wendt] shall be as fully responsible for the acts and omissions of its subcontractors and of persons either directly or indirectly employed by them as it is for its own acts and omissions.
>
> …

    31. <u>DEFAULT</u>.

(a) The existence of any of the following circumstances shall constitute a default by [Wendt] under this Contract and shall entitle Roeslein to terminate the Contract immediately upon written notice to [Wendt].

…

    (2) [Wendt]'s failure to comply strictly with any of the provisions of the Contract.

    …

    (5) [Wendt]'s disregarding of any applicable statute, law, ordinance, code, order, rule, regulation, proclamation or other governmental requirement.

    (6) [Wendt]'s failure in any manner to perform the Work strictly in accordance with this Contract . . . .

(b) In the event of termination for default, [Wendt] shall be and shall remain liable to Roeslein for all loss and damage which Roeslein may suffer by reason of such default and for any breaches by [Wendt] of its obligations or warranties under this Contract. …

(c) **Termination for default shall be effected by written notice from Roeslein stating the circumstances of default and the date upon which Roeslein intends to complete the removal from the worksite of the Work in its current state** (emphasis added).

(d) … If it is subsequently determined that [Wendt] was not in default or that its failure to strictly perform this Contract was due to causes beyond its control and without its fault or negligence, the termination shall be deemed to have been for the convenience of Roeslein, and Roeslein's sole obligation or liability to [Wendt] shall be to settle with [Wendt] in accordance with section 32(e).

32. <u>TERMINATION</u>.

…

(b) Roeslein shall have the right to terminate this Contract at any time for any reason upon written notice to [Wendt]. …

…

(e) Upon any termination of this Contract, other than termination due to the default of [Wendt], final settlement of all claims of [Wendt] arising out of this Contract shall be made as follows:

…

>  (2) If this is a lump sum contract, Roeslein shall pay [Wendt] an amount which, when added to any payments theretofore made to [Wendt] under this Contract, bears the same ratio to the total Contact price as the amount of the Work completed by [Wendt] prior to the effective date of termination bears to the total amount of the Work.

…

(f) If the termination of this Contract is due to the default of [Wendt] or as a result of strikes, lockouts, or other labor disputes, final settlement of all claims of [Wendt] arising out of this Contract shall be made as follows and no payments, other than any payments made in accordance with this section, shall be due until the Work has been fully completed.

…

>  (2) If this is a lump sum contract, Roeslein shall pay [Wendt] an amount which, when added to any payments theretofore made to [Wendt] under this Contract, bears the same ratio to the total Contact price as the amount of the Work completed by [Wendt] prior to the effective date of termination bears to the total amount of the Work; provided, however, that if Roeslein's costs to complete the Work exceed the unpaid balance of the Contract price (taking into account all previous payments to [Wendt]),

4

>
> [Wendt] shall be liable to Roeslein for such excess costs. Roeslein shall be entitled to deduct the amount of such excess costs from any amounts payable to [Wendt] under this Contract including, but not limited to, any amounts payable in accordance with this section.

…

ECF No. 73-2 at 2–5.

In the fall of 2021, Wendt used Trillium Construction Services, Inc., a staffing agency, to provide additional labor and perform work on the Project. In March 2022, the Erie County, Ohio Sheriff's Office received an anonymous tip that a Trillium employee had been selling marijuana to other workers on the worksite. After three rounds of surveillance, police arrested a Trillium employee for selling marijuana on the worksite on April 1, 2022.[2] The police discovered 1.5 pounds of marijuana in the worker's vehicle, which was individually bagged. Wendt placed one of its own workers on a ninety-day probation for being involved in the drug transactions.

Following the arrest, Roeslein's Construction Manager, Doug Wedge, directed Wendt to vacate the worksite. At 5:30 p.m. on April 1, 2022, Wedge called Tom Shaw, Wendt's Superintendent, to inform him that Roeslein had decided to release Wendt from the Project due to Wendt's actions and the arrests that had occurred on the worksite. On April 8, 2022, Tim Allen, Wendt's Director of Operations, emailed Roeslein requesting written notice of why Wendt was released

---

[2] Recreational marijuana was illegal in Ohio at this time.

from the project and for the names of the individuals selling drugs. Roeslein decided to respond to that email with the names of the individuals, but "nothing more."

Over the next month, Roeslein and Wendt participated in negotiations to close the Agreement, including how much of the project Wendt had completed. On May 12, 2022, Roeslein sent an email to Wendt stating that based on Wendt's completion percentage, Roeslein owed Wendt $127,000 beyond the amounts already paid. Roeslein further stated that Wendt was removed from the project for cause, that Roeslein would incur additional expenses beyond $127,000 to complete the project, that the additional costs were Wendt's account, and that Roeslein would not make additional payments to Wendt at that time.

In June 2022, Wendt's counsel sent Roeslein a letter, notifying Roeslein that Wendt was owed $1,882,185 for work performed on the Project. Roeslein's counsel replied that Wendt was not owed payment until the Project is completed and that Wendt is liable to Roeslein for excess costs. In July 2022, Wendt sent Roeslein a revised spreadsheet calculating Wendt's completion percentage.

After the parties were unable to resolve their dispute, Roeslein filed this lawsuit against Wendt on October 17, 2022. One of its allegations is that Wendt breached its obligations under the Agreement by failing to pay Roeslein for excess costs. Wendt contends that it is entitled to partial summary judgment on this issue. Wendt argues that Roeslein did not effect termination for default under the

6

Agreement because it never provided Wendt the written notice required by Section 31(c). As a result, Wendt argues that Roeslein cannot recover any excess costs. In response, Roeslein argues that it is immaterial whether it provided written notice because the Agreement does not provide a consequence for failure to provide written notice.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Cox v. First Nat'l Bank*, 792 F.3d 936, 938 (8th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). In ruling on a motion for summary judgment, I must "'view the evidence in the light most favorable to the opposing party' and draw all reasonable inferences in favor of that party." *Id.* (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)). A party moving for summary judgment bears the initial burden of informing me of the basis for its motion and identifying the portions of the record it believes show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Upon a properly supported motion, the opposing party "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Togerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Celotex*, 477 U.S. at 324).

## DISCUSSION

"Under Missouri law, summary judgment is appropriate [in a contract case] where the language of the contract is clear and unambiguous such that 'the meaning of the portion of the contract in issue is so apparent that it may be determined from the four corners of the document.'" *Fam. Snacks of North Carolina, Inc. v. Prepared Prods. Co.*, 295 F.3d 864, 867 (8th Cir. 2002) (alteration in original) (citation omitted); *see also Jacobson Warehouse Co. v. Schnuck Mkts., Inc.*, 14 F.4th 659, 668 (8th Cir. 2021) (citation omitted) (stating that the "interpretation of a contract is a matter of law"). "An ambiguity exists in a contract when there is duplicity, indistinctness, or uncertainty in the meaning of the words used." *Sharma v. Global Inv. Grp.*, LLC, 681 S.W.3d 282, 288 (Mo. Ct. App. 2023) (citation omitted). The mere disagreement as to a contract's meaning does not render its terms ambiguous. *Jacobson Warehouse Co.*, 14 F.4th at 668 (citation omitted). An unambiguous contract is enforced as written. *Id.*

**A. Roeslein cannot recover excess costs because it did not effect termination by default in accordance with the Agreement.**

If "a contract specifies the manner of termination, the party terminating the contract must adhere to the contract's express terms regarding termination." *Southland Metals, Inc. v. Am. Castings, LLC*, 800 F.3d 452, 460 (8th Cir. 2015). Here, the Agreement unambiguously provides that to effect termination for default, Roeslein must give written notice to Wendt stating the circumstances of default. *See*

8

ECF No. 73-2 at 4 ("Termination for default shall be effected by written notice from Roeslein stating the circumstances of default . . . .").

Roeslein admits that it did not provide Wendt with the written notice required to effect a termination for default. ECF No. 73 at 5. And even after Wendt's April 8, 2022 email specifically requested written notice of why Wendt was kicked off the Project, Roeslein chose to "[j]ust give [Wendt] the names; nothing more." ECF No. 65-3. Additionally, Roeslein's May 12, 2022 email stating that Wendt was removed from the project for cause did not state the circumstances of default as required by the Agreement. Nor can Roeslein's April 1, 2022 phone call to Wendt substitute for written notice. *See Baker v. Missouri Nat'l Life Ins. Co.*, 372 S.W.2d 147, 151 (Mo. Ct. App. 1963) (stating that "when the contract calls for notice in writing, notice in the course of a telephone conversation is insufficient to satisfy the contractual requirement").

Roeslein argues that the Agreement does not make Roeslein's recovery of excess costs contingent on written notice because the provision governing excess costs does not require written notice. However, under Section 32(f), Roeslein is entitled to recover excess costs only "[i]f the termination of th[e] Contract [wa]s due to the default of Wendt." *See* ECF No. 73-2 at 5. As a result, this provision applies only if Roeslein first effected termination for default under Section 31(c). Construing the Agreement in any other manner would render the written notice

9

requirement "without function or sense." *See Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003) (citation omitted) ("The terms of a contract are read as a whole . . . . and construed to avoid rendering other terms meaningless.").

Roeslein further argues that Wendt was not injured by Roeslein's failure to give written notice. But this is not the case. Section 31(d) of the Agreement provides that Wendt would not be liable for excess costs "[i]f it is subsequently determined that [Wendt] was not in default." *See* ECF No. 73-2 at 4. Without written notice of the precise circumstances constituting default, as required by the Agreement, Wendt was unable to contest Roeslein's allegations of default. *Cf. St. Louis Hous. Auth. v. Thompson*, 657 S.W.2d 390, 391 (Mo. Ct. App. 1983) (lease required written notice stating reason of termination so tenant could prepare a rebuttal to the allegations).

The Supreme Court of Texas recently addressed this issue under nearly identical facts in *James Construction Group, LLC v. Westlake Chemical Corporation*. 650 S.W.3d 392 (Tex. 2022). In that case, Westlake Chemical Corporation hired James Construction Group as a contractor on a construction project. *Id.* at 397. The contract between the parties permitted Westlake to terminate James for default with written notice. *Id.* at 398. In such a circumstance, James would be liable to Westlake for excess costs. *Id.*

After several safety incidents on the worksite, Westlake and James had a brief in-person meeting where Westlake informed James that it needed to remove its employees from the worksite. *Id.* at 400. Westlake did not send written notice of termination before or after that meeting, and there were no written communications between the parties memorializing the actions taken at the meeting. *Id.* Regardless, after the meeting, James ceased its work on the project. *Id.*

Westlake sued James, seeking excess costs. *Id.* Westlake argued that James was responsible for those costs under both the provision governing termination for default and another provision governing Westlake's right to intervene if it determined James was performing unsafely. *Id.* At trial, the jury awarded Westlake excess costs, finding that its oral notice had substantially complied with the written notice requirement. *Id.* at 401. The court of appeals affirmed that portion of the judgment. *Id.* James then appealed to the Supreme Court of Texas, arguing that Westlake was not entitled to excess costs because it did not satisfy the written notice requirement. *Id.* at 403.

The Supreme Court of Texas reversed and held that oral notice could not satisfy the written notice requirement. *Id.* at 407. According to the court, the "bargained-for requirement of written notice necessarily serves a purpose beyond actual notice; otherwise its inclusion is useless." *Id.* at 408 (noting that "a writing eliminates after-the-fact disputes about exactly *what* notice was given" and keeps

11

parties from "guess[ing about] whether [significant] consequences are being triggered"). The court ultimately concluded that "[o]nly termination for default . . . triggered James's obligation to pay" excess costs; that "James was entitled to the requisite written notice that would give rise to that obligation"; and that James was not liable for the excess costs because Westlake failed to satisfy the written notice requirement. *Id.* at 412–13, 415.

Although Texas law does not control here, the Texas court's analysis is highly persuasive given the factual similarities. Like James, Wendt was entitled to written notice of termination for default as a prerequisite to Roeslein's ability to recover excess costs. Roeslein failed to provide that written notice. As a result, Wendt is not liable for excess costs under the Agreement. *See Burrus v. HBE Corp.*, 211 S.W.3d 613, 619 (Mo. Ct. App. 2006) (citing *Graham v. Goodman*, 850 S.W.2d 351, 355 (Mo. banc 1993)) (explaining that "contract[s] should be construed against the drafting party and in favor of the one who merely signed it"); *cf. James Constr. Grp., LLC*, 650 S.W.3d at 403–404 (citation omitted) (stating that courts "do not protect parties from the consequences of their own oversights and failures in nonobservance of obligations assumed").

**B. Wendt did not waive the requirement of written notice.**

Contract provisions requiring written communications may be waived by the conduct of the parties. *Crabby's, Inc. v. Hamilton*, 244 S.W.3d 209, 214 (Mo. Ct.

12

App. 2008) (citation omitted).  In such a case, "the conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of [the] conduct is possible."  *Robb v. Bond Purchase*, LLC, 580 S.W.3d 70, 79 (Mo. Ct. App. 2019) (citation omitted).

Roeslein claims that Wendt waived its right to written notice under the Agreement because Wendt's actions after April 1, 2022, show that it understood it was terminated due to the sale of illegal drugs on the worksite.  In support of that claim, Roeslein states that: (a) Wendt did not attempt to return to worksite following Roeslein's removal order; (b) Wendt spent several months negotiating the closeout of the Agreement; and (c) Wendt did not affirmatively dispute Roeslein's claim that it was entitled to excess costs.  None of these is a "clear, unequivocal, and decisive act showing waiver implied by conduct."  *See Robb*, 580 S.W.3d at 79.

First, any instance of termination required Wendt to stop work, leave the site, and close out the Agreement.  As a result, Wendt's doing so does not indicate in any way that it waived its right to written notice of termination for default as a prerequisite to the recovery of excess costs.  *Cf. James Constr. Grp., LLC*, 650 S.W.3d 392, 412 (rejecting argument that lack of written notice was immaterial when contractor's actions demonstrated it knew it had been terminated because "actual notice is not a substitute for written notice").

13

Second, Wendt's participation in negotiations to close out the Agreement likewise does not indicate waiver.  To support its claim, Roeslein points to a spreadsheet that Wendt compiled to calculate how much of the project it had completed.  However, Wendt was required to calculate its completion percentage for any instance of termination, regardless of whether excess costs were at issue.  As a result, Wendt's doing so does not indicate that it waived its right to written notice of termination for default as a prerequisite to the recovery of excess costs.  *Cf. id.* ("While this communication may serve as some evidence that James had actual notice of its termination, it does nothing to satisfy Westlake's obligation under [the contract].").

Third, Wendt promptly asserted its right to written notice of termination on April 8, 2022, in its email to Roeslein asking why it was kicked off the project and requesting the names of the individuals selling drugs.  Roeslein argues that Wendt waived its right to written notice by failing to contest Roeslein's claim on May 12, 2022, that it was owed excess costs, but there is no evidence showing that Wendt ever suggested or implied it agreed with that claim.

The facts do not demonstrate that Wendt waived its right to written notice of termination for default as a prerequisite to Roeslein's ability to recover excess costs.  Rather, Wendt expressly requested such written notice, and its conduct in closing

14

out the Agreement can be explained by provisions unrelated to excess costs. As a result, there is no genuine issue of material fact as to waiver.

### C. Wendt's alleged breach was not incurable.

If a breach is not curable, then written notice of contract termination is not required because it would be a "vain or useless act." *Stacey v. Redford*, 226 S.W.3d 913, 918 (Mo. Ct. App. 2007). Here, Roeslein argues that written notice would have been futile given the severity of Wendt's alleged breach (i.e. drug activity occurring on the worksite).

The sale of marijuana on the worksite by an employee was not an incurable breach. Rather than terminate Wendt just hours after the arrest, Roeslein could have removed the individuals involved in the incident. *See* ECF No. 73-2 at 2 ("Roeslein reserves the right to have [Wendt] remove any employees of [Wendt] or [Wendt]'s subcontractors from performing services on the Work when, in Roeslein's sole opinion, such action is warranted."). *Compare Timber Ridge Escapes, LLC v. Quality Structures of Arkansas, LLC*, No. 6:17-CV-3169-MDH, 2019 WL 2080030, at *5 (W.D. Mo. Feb. 28, 2019) (concluding that an employee's threat to burn down portions of a construction project was not an incurable breach because the Plaintiff "could have as easily removed that employee and other co-conspirators"), *with Stacey*, 226 S.W.3d at 919 (concluding that written notice would have been "vain and useless" when the contract expressly defined the applicable situation as an

15

incurable breach and automatically terminated upon that occurrence).  As a result, there is no genuine issue of material fact as to whether Wendt's alleged breach was curable.

### D. Wendt's motion is not premature.

Roeslein claims that Wendt's motion is premature under Rule 56(d), Fed R. Civ. P., because discovery does not conclude until April 30, 2024.  Roeslein suggests that there are further facts to be discovered about whether Wendt understood it was terminated by Roeslein due to default, whether Wendt waived its right to written notice, and whether Wendt could cure its alleged breach.

Contrary to Roeslein's claim, the motion is not premature.  As discussed above, there is no genuine issue of material fact as to whether Roeslein provided written notice of termination for default.  It did not.  It is not relevant whether Wendt had actual notice of termination, because as discussed, excess costs were conditioned on written notice of termination for default.  Similarly, the undisputed facts show that Wendt did not waive its right to written notice and that its alleged breach was not incurable.

## CONCLUSION

After careful review of the facts and law relevant to this issue, the Court does not consider there to be a genuine issue of material fact as to whether Roeslein is

entitled to recover excess costs from Wendt under Section 32(f)(2) of the Agreement.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Wendt, LLP's motion for partial summary judgment [63] is **GRANTED** to the extent that Plaintiff Roeslein & Associates, Inc. may not recover excess costs under Section 32(f)(2) of the Agreement.

RODNEY W. SIPPEL<br>
UNITED STATES DISTRICT JUDGE

Dated this 11th day of April 2024.