UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROESLEIN & ASSOCIATES, INC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:22 CV 1105 RWS |
| ) | |
| WENDT, LLP, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This case arises out of a contract dispute between Plaintiff Roeslein & Associates, Inc. and Defendant Wendt, LLP regarding a construction project in Ohio. The case is now before me on a motion for partial summary judgment filed by Roeslein. In its motion, Roeslein argues that it is entitled to judgment on liability as to Counts I and II of its amended complaint. For the reasons discussed below, Roeslein's motion will be granted in part and denied in part.

## BACKGROUND[1]

Roeslein is an engineering and construction firm that designs, engineers, and constructs can-making and industrial plant buildings. In March 2021, Roeslein was hired to construct a canning plant in Huron, Ohio (the "Project"). In June 2021,

---

[1] The information in this section is taken from the parties' statements of uncontroverted material facts, ECF Nos. 103, 114 & 119, to the extent they are not specifically controverted by the opposing party as required by Local Rule 7–4.01(E).

Wendt submitted lump-sum bids to serve as a subcontractor for two parts of the project: rigging installation and mezzanine installation. Roeslein accepted those bids and sent two purchase orders: one for rigging installation for the lump sum of $3,967,849 and one for mezzanine installation for the lump sum of $2,936,755 (the "Purchase Orders"). Both Purchase Orders were subject to Roeslein's Standard Terms and Conditions (the "Agreements").

The Agreements contain the following relevant provisions governing subcontractors, security interests and liens, and default:

> 8. <u>VENDOR, ITS EMPLOYEES AND SUBCONTRACTOR</u>.
>
> … [Wendt] shall have the right to hire or discharge its employees and designate their work classifications. [Wendt] shall have complete charge and control of its employees and those of its subcontractors engaged in the performance of the Work. [Wendt] shall maintain strict discipline and order among its employees and employees of its subcontractor. [Wendt] shall not engage unqualified subcontractors nor employ unfit persons nor anyone unskilled in the work assigned. …
>
> 9. <u>ASSIGNMENTS AND SUBCONTRACTS</u>.
>
> …
>
> (c) [Wendt] shall be as fully responsible for the acts and omissions of its subcontractors and of persons either directly or indirectly employed by them as it is for its own acts and omissions.
>
> …
>
> (f) [Wendt] shall require each of its subcontractors, to the extent of the Work to be performed by such subcontractor, to be bound to [Wendt] by the terms of this Contract and to assume towards [Wendt] all the

obligations and responsibilities which [Wendt] assumes towards Roeslein under this Contract.

21. SECURITY INTERESTS; LIENS

(a) [Wendt] shall . . . deliver the Work free and clear of any and all security interests, liens, claims and encumbrances of any kind or nature arising out of or resulting from the performance of the Work by [Wendt] . . . . If any such lien, claim, security interest or encumbrance is filed, [Wendt] shall promptly cause it to be removed without cost to Roeslein.  [Wendt] shall protect, defend, and indemnify Roeslein . . . from any and all claims, losses, damages, costs, actions, judgments, expenses, and liabilities of every kind and nature whatsoever (including, but not limited to, attorneys' fees and costs and expenses of the preceding) which, either directly or indirectly, arise out of result from such liens, claims or encumbrances.

31. DEFAULT.

(a) The existence of any of the following circumstances shall constitute a default by [Wendt] under this Contract and shall entitle Roeslein to terminate the Contract immediately upon written notice to [Wendt].

…

> (2) [Wendt]'s failure to comply strictly with any of the provisions of the Contract.
>
> …
>
> (5) [Wendt]'s disregarding of any applicable statute, law, ordinance, code, order, rule, regulation, proclamation or other governmental requirement.
>
> (6) [Wendt]'s failure in any manner to perform the Work strictly in accordance with this Contract . . . .

…

3

> 38. COMPLIANCE WITH APPLICABLE LAWS
>
> … [Wendt] shall comply with all applicable statutes, laws, ordinances, codes, orders, rules, regulations, proclamations and other governmental requirements, and all provisions required in the Contract are incorporated by reference[.]

ECF No. 103-1 at 4–6.

In the fall of 2021, Wendt used Trillium Construction Services, Inc., a staffing agency, to provide additional labor and perform work on the Project. In March 2022, the Erie County, Ohio Sheriff's Office received an anonymous tip that a Trillium employee had been selling marijuana to other workers on the worksite. After three rounds of surveillance, police arrested a Trillium employee for selling marijuana on the worksite on April 1, 2022.[2] The police discovered 1.5 pounds of marijuana in the worker's vehicle, which was individually bagged. Wendt placed one of its own workers on a ninety-day probation for being involved in the drug transactions.

Following the arrest, Roeslein's Construction Manager, Doug Wedge, directed Wendt to vacate the worksite. At 5:30 p.m. on April 1, 2022, Wedge called Tom Shaw, Wendt's Superintendent, to inform him that Roeslein had decided to release Wendt from the Project due to Wendt's actions and the arrests that had occurred on the worksite. Over the next month, Roeslein and Wendt participated in negotiations to close the Agreement,

---

[2] Recreational marijuana was illegal in Ohio at this time.

4

On April 19, 2022, Trillium filed an Affidavit for Mechanics' Lien for the amount of $126,731.50 with the Erie County Recorder's Office after Wendt failed to pay Trillium for its work on the Project.  On December 7, 2022, Trillium filed a Complaint to Validate Mechanics' Lien and Other Relief in the Court of Common Pleas of Erie County, Ohio.  Roeslein removed that complaint to the U.S. District Court for the Northern District of Ohio on January 10, 2023.  Roeslein then requested that Wendt remove the lien pursuant to the Agreements, which it did not do.  As a result, Roeslein posted a mechanics' lien bond, which remains in place, and paid premiums for that bond to remove the lien.

Roeslein filed this lawsuit against Wendt on October 17, 2022.  Wendt filed its answers and counterclaims on November 23, 2022, and filed a third-party complaint against Trillium.  This Court dismissed Trillium from the case for lack of personal jurisdiction after finding that Trillium was not aware of the terms of the Agreement between Roeslein and Wendt and could not be bound by the Agreement's forum selection clause.  *See* ECF No. 44.

Roeslein now requests partial summary judgment on Wendt's liability for breach of contract as alleged in Counts I and II of its amended complaint.  Roeslein argues that Wendt breached the Agreements when it (1) allowed the illegal sale of drugs on its work site; (2) refused to remove Trillium's lien on the Project; and (3) did not ensure that Trillium agreed to be bound by the terms of the Agreements.

5

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Cox v. First Nat'l Bank*, 792 F.3d 936, 938 (8th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). In ruling on a motion for summary judgment, I must "'view the evidence in the light most favorable to the opposing party' and draw all reasonable inferences in favor of that party." *Id.* (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)). A party moving for summary judgment bears the initial burden of informing me of the basis for its motion and identifying the portions of the record it believes show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Upon a properly supported motion, the opposing party "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Togerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Celotex*, 477 U.S. at 324).

## DISCUSSION

Under Missouri law, the elements for a breach of contract are: "(1) the existence of an enforceable contract between the parties to the action; (2) mutual obligations have arisen under the contract terms; (3) defendant has not performed its obligations imposed by the contract; and (4) plaintiff was thereby damaged." *Superior Ins. Co. v. Universal Underwriters Ins. Co.*, 62 S.W.3d 110, 118 (Mo. Ct.

App. 2001).  In the present case, Roeslein and Wendt entered into the Agreement, which provided mutual obligations.  Roeslein asserts that Wendt failed to perform its obligations, and as a result, that Roeslein has been damaged.

### A.   Count I: Wendt breached the Agreements.

In Count I of its amended complaint, Roeslein alleges (1) that Wendt breached its obligation to comply strictly with the requirements of the Agreements and to maintain complete charge and control of and to maintain strict discipline and order among its employees and the employees of its subcontractors, and (2) that Wendt breached its obligation to promptly remove the Trillium mechanics' lien when requested to do so.

#### 1. Wendt breached the Agreement when its direct and indirect employees participated in the sale of drugs on the worksite.

Under Section 31(a)(5) and Section 38 of the Agreements, Wendt was required to comply with all applicable statutes, laws, ordinances, codes, orders, rules and regulations.  Under Section 9(f), Wendt agreed to be "fully responsible to Roeslein for the acts and omissions of . . . persons either directly or indirectly employed by them as it is for its own acts and omissions."  Finally, under Section 8, Wendt was required to have complete charge and control of and maintain strict discipline and order among its employees.  Roeslein alleges that Wendt breached these provisions when Wendt's employee and two employees of Trillium participated in a multi-week drug trafficking operation on Roeslein's work site.

7

Wendt responds that the on-site drug trafficking was beyond its control and does not demonstrate a failure to maintain strict discipline and order. Wendt notes that its employee handbook identifies unacceptable behavior, including the use and sale of drugs, that Wendt employees are drug tested before hiring and periodically tested, and that Roeslein did not take any additional actions to bolster project safety after it terminated Wendt.

Despite Wendt's contentions that the drug trafficking was beyond its control, it does not address Section 9(f) of the Agreements, under which it agreed to be fully responsible to Roeslein for the acts of persons directly or indirectly employed by them. Wendt directly employed one of the persons arrested for the sale of drugs on the worksite and indirectly employed two others.[3] There is no dispute that the sale of drugs on the work site violated the applicable law. Under the terms of Section 8, Wendt is responsible for those acts. As a result, Wendt breached Section 31(a)(5)[4] and Section 38 of the Agreements and summary judgment will be granted on this

---

[3] As discussed in Section B, there is an issue of fact as to whether Trillium was Wendt's subcontractor. However, for the purposes of Section 8 of the Agreement, Wendt agreed that "in essence, [Trillium is an] extension of us." ECF No. 113 at 3.

[4] Wendt argues that Section 31(a) of the Agreement is no longer applicable because of my order ruling that Roeslein could not recover excess damages under Section 32(f). *See* ECF No. 89. However, that order did not write Section 31 out of the Agreement. My order on excess fees found that Roeslein did not have a contractual right to the excess costs in Section 32(f) because it did not follow the proper procedure in giving written notice to Wendt of termination for default. The order did not determine whether Wendt defaulted under Section 31 of the Agreement, but merely determined that Roeslein did not effect a *termination for default* required to take advantage of the process set forth in Section 32(f).

8

issue. *See Greentree Props., Inc. v. Kissee*, 92 S.W.2d 289, 293 (Mo. Ct. App. 2002) (quoting *Harris v. Desisto*, 932 S.W.2d 435, 444 (Mo. Ct. App. 1996)) ("When a performance of a duty under a contract is due[,] any non-performance is a breach.").

### 2. Wendt breached the Agreement when it did not remove Trillium's mechanics' lien.

Under Section 21 of the Agreements, Wendt agreed to deliver the Work free and clear of any and all liens, and if any such lien, was filed, Wendt agreed to promptly cause it to be removed without cost to Roeslein.  Wendt further agreed that if a lien was filed, it would protect, defend, and indemnify Roeslein . . . from any and all claims, losses, damages, costs, actions, judgments, expenses, and liabilities of every kind and nature whatsoever (including, but not limited to, attorneys' fees and costs and expenses of the preceding) which, either directly or indirectly, arise out of result from such liens.

Roeslein alleges that Wendt breached this provision when it failed to remove Trillium's mechanics' lien on the Project and forced Roeslein to post a mechanics' lien bond and pay premiums for that bond to remove the lien.  Wendt responds that Roeslein's claim is barred because Roeslein was the first to materially breach the Agreements by failing to pay Wendt.

Wendt's argument that Roeslein materially breached the Agreements prior to Trillium's lien fails.  Under the Agreements, payments were governed by "Net 60" payment terms, meaning that Roeslein was required to pay Wendt's invoices 60 days

9

from the time Roeslein received them.  *See* ECF No. 103-1 at 3.  Roeslein received Wendt's invoice on February 28, 2022, *see* ECF No. 118-1 at 3, so any payment to Wendt under those invoices was not due until April 29, 2022, or after Trillium filed its lien on April 19, 2022.  Because Roeslein's payment to Wendt was not yet due, Roeslein was not the first to breach the contract and Wendt was obligated to remove Trillium's lien.  Regardless, Wendt offers no evidence to support its claim that the money owed to Wendt by Roeslein would have been used to remove the lien.  As a result, summary judgment will be granted on this issue.

**B. Count II: There is a genuine issue of material fact as to whether Trillium was Wendt's subcontractor.**

In Count II of its amended complaint, Roeslein alleges that Wendt breached its obligation to require any subcontractor it hired to be bound to Wendt by the Agreements and to assume toward Wendt all the obligations that Wendt assumed toward Roeslein under the Agreement.

As I explained in my order dismissing Trillium from this case, the Agreements were not referenced in the contract between Wendt and Trillium and uncontroverted evidence shows that Trillium was not aware of the terms of the Agreements.  *See* ECF No. 44 at 10.  As a result, Trillium was not bound to the forum selection clause in the Agreements and Roeslein was forced to defend an action against Trillium in the U.S. District Court for the Northern District of Ohio.  Roeslein argues that it is

10

entitled to damages for the costs of that litigation because those costs were incurred as a result of Wendt's failure to bind its subcontractor, Trillium, to the Agreement.

Wendt argues that Trillium was not its subcontractor, but a staffing agency from whom Wendt would obtain additional manpower. *See* ECF No. 115 at n.1. On this issue, Wendt's corporate representative testified that "Trillium's not a subcontractor that provides a service that we aren't doing as part of our contract, they're merely providing labor." ECF No. 113 at 3.

"The customary definition of 'subcontractor' in the construction industry is 'one who takes a portion of a contract from the principal contractor or another subcontractor.'" *City of Kansas City, MO ex rel. Lafarge N. Am. Inc. v. Ace Pipe Cleaning, Inc.*, 349 S.W.3d 399, 410 (Mo. Ct. App. 2011) (cleaned up). In the context of the Miller Act, the Supreme Court has distinguished between subcontractors who perform "a specific part of the labor or material requirements of the original contract" and entities who merely supply labor or materials. *See, e.g.*, *Clifford F. MacEvoy Co. v. U.S. for Use and Benefit of Calvin Tomkins Co.*, 322 U.S. 102 (1944); *cf. U.S. for Use and Benefit of Morris Constr., Inc. v. Aetna Cas. Ins. Co.*, 908 F.2d 375 (8th Cir. 1990) (finding that an equipment lessor was a subcontractor because the equipment lease agreement required the lessor to "perform a major part of the labor and material requirements of the original contract by supplying special heavy equipment and trained operators").

In this case, Roeslein has not submitted evidence proving that Wendt contracted a specific or specialized portion of its contract to Trillium, and there remains a genuine dispute of material fact as to whether Trillium was a subcontractor of Wendt. As a result, summary judgment cannot be granted as to Roeslein's claim that Wendt breached the contract by failing to require Trillium to be bound by the Agreements.

## CONCLUSION

After careful review of the facts and law relevant to this issue, the Court does not consider there to be a genuine issue of material fact as to Roeslein's claim for breach of contract in Count I of its amended complaint. However, the Court does consider there to be a genuine issue of material fact as to Roeslein's claim for breach of contract in Count II of its amended complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Roeslein & Associates, Inc.'s motion for partial summary judgment [101] is **GRANTED** as to Count I of Roeslein's amended petition and **DENIED** as to Count II of Roeslein's amended petition.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 24th day of March 2025.