UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROESLEIN & ASSOCIATES, INC, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 4:22 CV 1105 RWS<br>) |
| WENDT, LLP, | )<br>) |
| Defendant. | ) |

### **MEMORANDUM AND ORDER**

This case arises out of a contract dispute between Plaintiff Roeslein & Associates, Inc. and Defendant Wendt, LLP regarding a construction project in Ohio. The case is now before me on a motion for summary judgment filed by Roeslein. In its motion, Roeslein argues that it is entitled to summary judgment as to Counts I, II, and III of Wendt's counterclaim. For the reasons discussed below, Roeslein's motion will be granted in part and denied in part.

### **BACKGROUND**[1]

Roeslein is an engineering and construction firm that designs, engineers, and constructs can-making and industrial plant buildings. In March 2021, Roeslein was hired to construct a canning plant in Huron, Ohio (the "Project"). In June 2021,

---

[1] The information in this section is taken from the parties' statements of uncontroverted material facts, ECF Nos. 135, 140, 142 & 144, to the extent they are not specifically controverted by the opposing party as required by Local Rule 7–4.01(E).

Wendt submitted lump-sum bids[2] to serve as a subcontractor for two parts of the project: rigging installation and mezzanine installation. Roeslein accepted those bids and sent two purchase orders: one for rigging installation for the lump sum of $3,967,849 and one for mezzanine installation for the lump sum of $2,936,755 (the "Purchase Orders"). Both Purchase Orders were subject to Roeslein's Standard Terms and Conditions (the "Agreements").

Under the Agreements, Wendt could request extra compensation for any change to the agreed-upon work that increased its cost to perform. The Agreements contain the following provision governing adjustments to compensation:

> 35. CLAIMS.
>
> Any claim of [Wendt] against Roeslein for . . . extra compensation . . . shall be conclusively deemed to have been waived by [Wendt], unless such claim is **set forth in a written notice delivered to Roeslein within 30 days** after the conditions upon which such claim is based become known to [Wendt] . . . . **Such notice shall include itemized supporting data specifically identifying each and every element of cost** that [Wendt] claims to have incurred or claims that it will incur.

ECF No. 135-3 at 9 (emphasis added).[3]

---

[2] In a lump sum contract, the price is fixed regardless of the hours or expense required for the contractor to perform the agreed-upon work. In contrast, in a time-and-materials contract, the contractor bills for cost as they arise.

[3] Roeslein also argues that Wendt is barred from recovery under Section 4 of the Agreements. However, Section 4 requires Roeslein to furnish Wendt with a written change notice. *See* ECF No. 135-3 at 6. Roeslein does not dispute that it did not issue written change notices. *See* ECF No. 143 at 13. As a result, Section 4 is inapplicable to this dispute.

2

Roeslein terminated Wendt from the Project on April 1, 2022, after police made arrests relating to drug transactions that occurred on the work site. The parties now dispute several of Wendt's claims for additional compensation, both pre-termination and post-termination. Wendt's pre-termination claims regard change orders 5, 11, and 12 for a total of $275,425. Wendt's post-termination claims regard (1) survey work for $66,503, (2) additional labor for $122,256, and (3) change orders 48, 54, 55, 64, and 65 for a total of $132,458.

Wendt submitted change orders 1–12 on January 19, 2022. *See* ECF No. 135-7. These change orders sought compensation for extra work completed from August 25, 2021 to December 28, 2021. On January 25, 2022, Roeslein's Project Director, Mitchell May, requested "additional back-up" and "details" for change orders 5, 11, and 12, including "manhours by day or by week" to document the changes and to justify the additional compensation. ECF No. 135-8 at 3. Noting that the three items "add up to a significant number of hours," Roeslein informed Wendt that the "right way to handle this kind of situation would have been to document these delays daily on a timesheet and having a Roeslein construction [official] sign off on it." *Id.*

On February 7, 2022, Wendt provided Roeslein the total hours worked for change orders 5, 11, and 12. *See* ECF No. 135-9 at 2. On February 25, 2022, Roeslein responded, stating that it "was hoping for some details which [it] could share with Ardagh." ECF No. 135-8 at 2. Wendt did not reply. On March 7, 2022,

3

Roeslein contacted Wendt again, stating that it "would like to close out these change orders." *Id.* Roeslein further stated that it was "not going to be able to approve these delay change order without detailed documentation." *Id.*

On March 16, 2022, Wendt responded to Roeslein with a summary spreadsheet identifying the date, the extra work completed, and the labor hours for change orders 5, 11, and 12. *See* ECF No. 135-10. The summary was created by looking at daily reports that the foreman created each day, including "labor hours onsite," which showed the names of laborers onsite and daily time sheets. The spreadsheet did not include who performed the work, the reason for the work, or how long each employee worked the items being billed to Roeslein. On July 23, 2024, *after* the close of discovery in this case, Wendt provided Roeslein the time sheets relating to change orders 5, 11, and 12.

After Wendt was terminated from the Project, Wendt sent Roeslein a closeout spreadsheet which set forth Wendt's determination of the completion percent, added change orders 47–65 to the change orders table, and added the survey and additional labor costs to the contract table. *See* ECF No. 135-13. Roeslein did not agree with Wendt's determination of the completion percent. In addition, Roeslein did not approve change orders 48, 54, or 55 because they were listed on Wendt's daily reports but did not identify the hours worked. Roeslein also did not approve change orders 64 or 65 because they were not listed in the daily reports. However, Wendt

4

provided some information about that extra work in a document submitted to Roeslein on August 12, 2022. *See* ECF No. 142-7 at 34–35. In the same document, Wendt also stated that it incurred extra costs for the survey work. *See id.* at 3. On January 6, 2025, *after* the close of discovery and filing of Roeslein's motion, Wendt produced documents from the survey company evidencing the costs paid by Wendt.

On October 18, 2024, Wendt filed an amended complaint and counterclaim against Roeslein, seeking recovery on its claims for extra compensation under breach of contract (Count I), Missouri's Prompt Payment Act (Count II), and unjust enrichment (Count III). On December 16, 2024, Roeslein filed this motion requesting summary judgment as to all three counts of Wendt's counterclaim.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Cox v. First Nat'l Bank*, 792 F.3d 936, 938 (8th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). In ruling on a motion for summary judgment, I must "'view the evidence in the light most favorable to the opposing party' and draw all reasonable inferences in favor of that party." *Id.* (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)). A party moving for summary judgment bears the initial burden of informing me of the basis for its motion and identifying the portions of the record it believes show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Upon a properly supported motion, the opposing party "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Togerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Celotex*, 477 U.S. at 324).

## DISCUSSION

In its motion for summary judgment on Wendt's counterclaims, Roeslein claims that Wendt is not entitled to recover on its claims for $596,642 in extra compensation for several change orders, survey work, and additional labor because (A) Wendt failed to request those costs in accordance with the Agreements; (B) Missouri's Prompt Payment Act is inapplicable because the alleged payments were not "indisputably due" or "fixed and determinable"; and (C) unjust enrichment is inapplicable because the dispute is governed by an express contract.

### A.     Count I: Breach of Contract

Roeslein argues that it is entitled to summary judgment as to Count I of Wendt's counterclaim, which alleges that Roeslein breached the Agreements by failing to pay Wendt $596,642 for the extra work it performed on the Project.

Claims for extra compensation are governed by Section 35 of the Agreements. To recover extra compensation, Wendt was required to deliver written notice to Roeslein within 30 days after becoming aware of the extra costs. ECF No. 135-3 at 9. The written notice required "itemized supporting data specifically identifying

6

each and every element of cost . . ." *Id.* Roeslein argues that Wendt did not timely submit change orders 5, 11, and 12, and that Wendt did not provide itemized supporting date for any of its disputed claims for extra compensation.

1. Timeliness

Wendt argues that the 30-day time requirement was waived by Roeslein or modified by the parties. However, Section 42 of the Agreements states that "Roeslein shall not be deemed to have waived any right . . . unless such waiver is in writing and duly executed by it." *Id.* Section 42 further clarifies that "[n]o failure to exercise, delay in exercising or course dealing with respect to any right . . . shall operate as a waiver thereof by Roeslein." *Id.* In addition, Section 47 provides that the Agreements "may be amended only by another written agreement duly executed by the parties." *Id.* at 10.

The Agreements' provisions regarding waiver and modification are unambiguous and must be enforced as written. *See Jacobson Warehouse Co. v. Schnuck Mkts., Inc.*, 13 F.4th 659, 668–69 (8th Cir. 2021); *Leggett v. Missouri State Life Ins. Co.*, 342 S.W.2d 833, 877 (Mo. banc 1960) ("Courts will not overthrow the plain and unambiguous terms of a written agreement because of an erroneous practical construction which the parties have adopted."). As there has been no written waiver or modification here, Wendt is bound by the 30-day time requirement for submitting extra compensation claims. Wendt submitted change orders 5, 11,

7

and 12 on January 19, 2022. Other than items 4–6 in change order 11, the work for which Wendt is seeking extra compensation occurred more than 30 days before Wendt submitted the change orders.[4] *See* ECF No. 135-10. As a result, apart from items 4–6 in change order 11, Wendt cannot recover additional compensation for change orders 5, 11, and 12.

### 2. Itemized Supporting Data

With respect to Wendt's remaining claims for extra compensation, the parties dispute whether Wendt's claims included sufficient "itemized supporting data" as required by Section 35 of the Agreements. The Agreements do not define the term "itemized supporting data."

Wendt did submit to Roeslein some documentation regarding its extra work, but Roeslein argues that the documentation submitted was not sufficiently detailed. Wendt disagrees with Roeslein and argues that industry custom demonstrates that "itemized supporting data" means a brief description of the work completed, the labor costs, the material costs, and equipment costs. *See* ECF No. 142-6 at ¶¶ 4–5. Wendt also notes that Roeslein acknowledged that likely "at least 75% of the change orders are real." *See* ECF No. 142-15 at 2. However, Roeslein repeatedly asked Wendt for more detailed supporting data regarding the change orders. *See, e.g.*, *id.*

---

[4] In change order 11, item 4 relates to work done on December 21, 2021; item 5 relates to work done on December 27, 2021; and item 6 relates to work done on December 28, 2021. ECF No. 135-10 at 4. All other items in change orders 5, 11, and 12 relate to work done before December 21, 2021, more than 30 days before the change orders were submitted on January 19, 2022.

8

In addition, the project owner's representative testified that Wendt's change orders were "a very large amount," were poorly documented, and should be subject to greater scrutiny. ECF No. 135-6 at 61:13–17; 62:1–2; 89:22–24; 91:12–13.

The parties' reliance on extrinsic evidence indicates that the term "itemized supporting data" is ambiguous. Here, "[b]oth parties have extrinsic evidence favorable to their interpretation of the contract and the meaning of the term "[itemized supporting data]." *See Lafarge N. Am., Inc. v. Discovery Grp. L.L.C.*, 574 F.2d 973, 981 (8th Cir. 2009). As a result, there is a question of fact as to the parties' intent that must be determined at trial. For that reason, Roeslein will not be granted summary judgment as to Wendt's claims for extra compensation, except for those discussed above.

## B. Count II: Missouri's Prompt Payment Act

Roeslein argues that it is entitled to summary judgment as to Count II of Wendt's counterclaim, which seeks interest and attorney fees under Missouri's Prompt Payment Act (the "PPA").

The PPA permits the recovery of interest and attorney fees if a party to a construction contract fails to "make all scheduled payments pursuant to the terms of the contract." MO. REV. STAT. § 431.180.1. To recover under the PPA, the payment owed must be "indisputably due" under the contract, and the amount owed must be "fixed and determined or readily determinable." *Weitz Co. v. MH Washington*, 631

9

F.3d 510, 531 (8th Cir. 2011).  Even if these requirements are met, courts retain discretion to deny interest and fees.  *See Timber Ridge Escapes, LLC v. Quality Structures of Akransas, LLC*, 6 F.4th 781, 790 (8th Cir. 2021) (citing *Walton Constr. Co. v. MGM Masonry, Inc.*, 199 S.W.3d 799, 807–08 (Mo. Ct. App. 2006)).

Wendt is seeking payment for four invoices sent to Roeslein between February 28, 2022 and April 18, 2022.  *See* ECF No. 135-17.  Under the Agreements' "Net 60" payment terms, Roeslein was required to pay Wendt's invoices within 60 days of receiving them.  *See* ECF No. 135-3 at 2.  Here, Roeslein received the earliest disputed invoice on February 28, 2022, *see* ECF No. 135-17 at 2, so any payment to Wendt was not due until April 29, 2022.  But after Roeslein terminated the Agreements on April 1, 2022, the pending invoices became subject to the closeout procedure in Section 32(e)(2) of the Agreements.  *See* ECF No. 135-3 at 9.

Section 32(e)(2) provides that, upon termination of the Agreements, Roeslein shall pay to Wendt a prorated amount based on the ratio of work completed relative to the total contract price.  *Id.*  This is a scheduled payment within the meaning of the PPA.  *See Timber Ridge Escapes*, 6 F.4th at 788–789 (citing *Twehous Excavating, Inc. v. Jefferson City Ret., LLC*, 613 S.W.3d 499, 507 (Mo. Ct. App. 2020)) (finding that payment being due at the completion of work is a scheduled payment).  As a result, the payment was indisputably due.

10

The amount owed is also fixed and determinable because it is governed by a contractual formula based upon percentage of project completion.  Although the amount due is disputed by the parties, both parties agree that the proper measure of damages is ascertainable by the formula set forth in Section 32.  *See Far East Servs. Corp. v. Tracker Marine, L.L.C.*, 246 S.W.3d 486, 507–509 (Mo. Ct. App. 2007) (distinguishing between disputes about the *amount* of damages and disputes about the *measure* of damages).

Finally, because there remain contract claims to be resolved at trial, "the prudent course is to allow the PPA claim to remain and allow the Court an opportunity to hear the evidence and decide for itself whether interest and fees are warranted."  *See Weitz Co., L.L.C. v. MacKenzie House, L.L.C.*, No. 07-0103-CV-W-ODS, 2009 WL 3929440, at *2 (W.D. Mo. Nov. 19, 2009).  This is especially true given that there is a "legitimate dispute here of what was owed and who owed it."  *See Walton Constr.*, 199 S.W.3d at 807–08; *see also Timber Ridge Escapes*, 6 F.4th at 789 (stating that "Missouri law allows courts to deny fees based on a legitimate dispute . . ."); *Fohn v. Title Ins. Corp. of St. Louis*, 529 S.W.2d 1, 5 (Mo. banc 1975) (stating that "where the person liable does not know the amount he owes he should not be considered in default because of failure to pay").  As a result, Roeslein will not be granted summary judgment as to Count II of Wendt's counterclaim.

11

### C.    Count III: Unjust Enrichment

Roeslein argues that it is entitled to summary judgment as to Count III of Wendt's counterclaim, which alleges that Roeslein's failure to pay for Wendt's work resulted in unjust enrichment.

Unjust enrichment is a theory of recovery "founded upon equitable principles whereby the law implies a contract to prevent unjust enrichment." *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014) (citations omitted). Unjust enrichment arises only if there is no express contract that governs the subject matter of a dispute. *See A & L Underground, Inc. v. Leigh Constr., Inc.*, 162 S.W.3d 509, 511 (Mo. Ct. App. 2005) (explaining that if an express contract exists, then "the law does not need to imply one"). If there exists an express contract governing the subject matter of a dispute, then equitable theories of recovery are not available and "rights are limited to the express terms of the contract." *Grisham v. Mission Bank*, 531 S.W.3d 522, 539 (Mo. Ct. App. 2017) (citations omitted).

Here, Wendt's counterclaim relates exclusively to its work performed on the Project and payment for that work. These matters, including the extra work performed by Wendt, are explicitly governed by the Agreements. Wendt does not respond to Roeslein's argument that an unjust enrichment claim cannot coexist with a breach of contract claim regarding the same facts and damages. As a result,

12

Roeslein will be granted summary judgment as to Count III of Wendt's counterclaim.

## CONCLUSION

After careful review of the facts and law relevant to this issue, I consider there to be a genuine issue of material fact as to Count I of Wendt's counterclaim for breach of contract, except for change orders 5, 11, and 12 (but excluding items 4–6 in change order 11).  I also consider there to be a genuine issue of material fact as to Count II of Wendt's counterclaim for interest and fees under Missouri's Prompt Payment Act.  However, I do not consider there to be a genuine issue of material fact as to Count III of Wendt's counterclaim for unjust enrichment.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Roeslein & Associates, Inc.'s motion for summary judgment on Wendt's counterclaims [133] is **GRANTED in part and DENIED in part** as follows:

- Roeslein is **GRANTED** summary judgment as to Count I regarding Wendt's requests for extra compensation in change orders 5, 11, and 12, except for items 4–6 in change order 11.

- Roeslein is **DENIED** summary judgment as to Count I regarding items 4–6 in change order 11; change orders 48, 54, 55, 64, and 66; survey work; and additional labor.

- Roeslein is **DENIED** summary judgment as to Count II.

- Roeslein is **GRANTED** summary judgment as to Count III.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 24th day of March 2024.